UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELRICK GEORGE, Plaintiff, | : | |
| v. | : | 3:24cv1549 (MPS) |
| OFFICER RIVERA, et al., Defendants. | : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

The self-represented plaintiff, Elrick George, filed this action under 42 U.S.C. § 1983 while incarcerated within the Connecticut Department of Correction ("DOC"). Compl., ECF No. 1. After an initial review under 28 U.S.C. § 1915A, the Court permitted Plaintiff to proceed against seven DOC correctional employees—Israel Rivera, Zachary Keaton, Brian Guy, Rudolph Nelson, Kiyon Chandler, Kimberly Casey and Vinod Kalhotra—for damages on Eighth Amendment claims of deliberate indifference to his safety. Initial Review Order ("IRO"), ECF No. 13.[1]

On February 3, 2026, Defendants filed a motion for summary judgment with a memorandum of law, a Local Rule 56(a)(1) Statement, and supporting exhibits. Mot. for Summ. Judg., ECF No. 61; Defs.' Mem., ECF No. 61-1; Defs.' L.R., ECF No. 61-2; Defs.' Exs., ECF Nos. 61-4 to 61-17. Plaintiff filed his opposition memorandum with a Local Rule 56(a)(2) Statement and his declaration. Pl.'s Opp., ECF No. 66; Pl.'s L.R., ECF No. 66-1; Pl.'s Ex A, George Decl., ECF No. 66-2. On April 14, 2026, Defendants filed a Reply. Defs.' Reply, ECF No. 72.

[1] The clerk is instructed to correct the spellings of the last names for Defendants Kiyon Chandler and Vinod Kalhotra. *See* Defs.' Mem., ECF No. 61-1.

For the reasons set forth below, the motion for summary judgment is granted in part and denied in part.

## I. FACTS[2]

At the time relevant to this action, Plaintiff was incarcerated as a sentenced inmate at Osborn Correctional Institution ("Osborn"). Defs.' L.R. at ¶ 1.[3] He was housed at Osborn from February 9, 2023 until January 23, 2024, when he was transferred to Corrigan Correctional Center ("Corrigan"). *Id.* at ¶¶ 1-2, ECF No. 61-2.[4] Defendants Rivera, Keaton, Guy, Nelson, and Chandler were all employed by DOC as Osborn Correctional Officers. *Id.* at ¶¶ 39-43. Defendant Casey worked as an Osborn Correction Counselor Supervisor. *Id.* at ¶ 44. Defendant Kalhotra held the rank of Lieutenant at Osborn. *Id.* at ¶ 45.

---

[2] This factual background reflects the Court's review of the parties' statements of facts and the supporting exhibits. The Court also considers the allegations of Plaintiff's verified complaints in reviewing the motion for summary judgment. *See Jordan v. LaFrance*, No. 3:18-cv-01541 (MPS), 2019 WL 5064692, at *1 n.1, *4 (D. Conn. Oct. 9, 2019) (a "verified complaint ... may be considered as an affidavit" for summary judgment purposes"); *Walcott v. Connaughton*, No. 3:17-CV-1150, 2018 WL 6624195, at *1, n. 1 (D. Conn. Dec. 18, 2018). The Court includes the facts relevant to Plaintiff's administrative remedies in its discussion of his compliance with the Prison Litigation Reform Act's exhaustion requirement.

The Defendants have informed Plaintiff of the requirements for filing his papers in opposition to the motion for summary judgment under Local Rule 56. Notice, ECF No. 61-3. Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Local Rule 56(a)3 provides that "each denial in an opponent's Local 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." To the extent a Local Rule 56(a)2 Statement does not comply with Local Rule 56, the Court may consider a defendant's statement of fact to be admitted if supported by evidence. *Patterson v. Quiros*, No. 3:19CV147 (MPS), 2021 WL 681144, at *1, n.3 (D. Conn. Feb. 22, 2021).

[3] Generally, the Court cites only to the relevant paragraph in the Local Rule 56(a)1 Statement where the facts are not disputed. Any cited page numbers are the page numbers assigned by the CM/ECF system as reflected in the ECF header and not the page numbers marked on the documents themselves, if any.

[4] He was later returned to Osborn on October 4, 2024, where he remained until January 9, 2025. *Id.*

On Sunday, March 12, 2023, at approximately 7:34 PM, Plaintiff and his cellmate became involved in a physical altercation in their G-Block Cell #11. *Id.* at ¶ 46. Lieutenant Kalhotra responded to a code called by Officer Keaton. *Id.* at ¶ 48. When he arrived at Cell #11, Lieutenant Kalhotra observed that Plaintiff and his cellmate had been separated and placed in handcuffs. Plaintiff was escorted by officers for a medical evaluation of the burns he sustained after his cellmate threw hot water on him. *Id.*

Plaintiff's cellmate reported to Lieutenant Kalhotra that Plaintiff had stolen his commissary. *Id.* at ¶¶ 50. Plaintiff avers he explained to the investigating correctional officers that his cellmate attacked him after he expressed his disapproval that the cellmate was bringing stolen items into their shared cell. Pl.'s Ex. A, George Decl. at ¶ 34, ECF No. 66-2.

Both Plaintiff and his cellmate received Class A Disciplinary Reports for fighting. Defs.' L.R. at ¶ 51, ECF No. 61-2. Plaintiff was found guilty of the charges after a disciplinary hearing. *Id.*

The parties dispute whether—prior to the attack on March 12, 2023—Plaintiff made requests to Defendants to be moved due to his safety concerns about being housed with his cellmate. *See id.* at ¶ 52; Pl.'s L.R. at ¶ 52. *See* Pl.'s Ex. A, George Decl. at ¶¶ 12, 18-19, 23-24, 26, ECF No. 66-2.

Counselor Supervisor Casey avers that she reviewed prison records and determined that she did not work at Osborn on March 11 or 12, 2023.[5] *See* Defs.' L.R. at ¶ 53, ECF No. 61-2; Defs.' Ex. M, Casey Decl. at ¶¶ 8-11, ECF No. 61-15.

---

[5] In his complaint, Plaintiff alleged he made a request to be relocated for his safety to Counselor Supervisor Casey on March 12, 2023. Compl. at ¶ 6.

## II. LEGAL STANDARD

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation but must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly

supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## III. DISCUSSION

Defendants argue that (1) Plaintiff has not complied with the Prisoner Litigation Reform Act ("PLRA") because he has failed to exhaust his administrative remedies for his Eighth Amendment claims;[6] and (2) the undisputed facts show that Plaintiff's Eighth Amendment claims fail on the merits. Defs.' Mem., ECF No. 61-1. The Court first considers whether Plaintiff has satisfied the PLRA exhaustion requirement.

### A. PLRA

The PLRA, which governs actions brought by prison inmates, requires a prisoner to exhaust administrative remedies prior to filing a federal lawsuit regarding prison conditions. 42 U.S.C. § 1997e(a) (providing that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by ... making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also*

---

[6] Defendants assert non-exhaustion of administrative remedies as an affirmative defense. Answers, ECF Nos. 21, 49.

*Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"). The PLRA requires "proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]"). Thus, proper exhaustion is "not satisfied when grievances were dismissed because prisoners had missed deadlines set by the grievance policy." *Jones v. Bock*, 549 U.S. 199, 217–18 (2007) (citing *Woodford*, 548 U.S. at 88).

"Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011). An individual's failure to exhaust administrative remedies is excusable only if the remedies are unavailable. *See Ross v. Blake*, 578 U.S. 632, 642 (2016). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation marks and citation omitted). The *Ross* court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643."Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart

inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. The Second Circuit has observed that "the three circumstances discussed in *Ross* do not appear to be exhaustive." *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). The Court is, however, guided by these illustrations, *see Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016) ("While not exhaustive, these illustrations nonetheless guide the Court's inquiry.").

Exhaustion of administrative remedies is an affirmative defense, *Perttu v. Richards*, 605 U.S. 460, 469 (2025), and the defendant bears the burden of proof, *see Jones*, 549 U.S. at 216. Once the defendant provides reliable evidence that administrative remedies were not exhausted before the plaintiff commenced the action, the plaintiff must present evidence showing that he did exhaust his administrative remedies or that administrative remedy procedures were not available to him. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013).

Administrative Remedies Under Administrative Directive 9.6[7]

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. Thus, Plaintiff was obligated to exhaust his administrative remedies for his Eighth Amendment claims against the defendants under Administrative Directive 9.6 prior to filing this action. *See Riles v. Buchanan*, 656 F. App'x 577, 579 (2d Cir. 2016) ("The Connecticut Department of Correction ('DOC') requires inmates to submit grievances in accordance with Administrative Directive 9.6 ('A.D. 9.6')").

Directive 9.6 mandates that "each inmate in [DOC] custody shall have access to

[7] Defendants have submitted the relevant version of Administrative Directive 9.6. *See* Defs.' Ex. A, ECF No. 61-4.

Administrative Directive 9.6, Inmate Administrative Remedies." A.D. 9.6(5)(d). It provides that "copies of Administrative Directive 9.6, Inmate Administrative Remedies, shall be available at each facility and available to inmates upon request[,]" A.D. 9.6(5)(b)(i), and "[a]ny inmate who needs assistance in using the Inmate Administrative Remedies Process shall receive assistance upon request." A.D. 9.6(5)(d)(i).

Administrative Directive 9.6 contains grievance procedures consisting of four steps: (1) informal resolution; (2) filing a Level 1 grievance; (3) filing a Level 2 grievance; (4) and filing a Level 3 grievance. *See Harvin v. Cheney*, No. 3:23CV328 (MPS), 2025 WL 1616682, at *9–10 (D. Conn. June 20, 2025) (describing details of A.D. 9.6's procedures). "Any CN 9602, Inmate Grievance Form- Level 1, must be filed within 30 calendar days of the occurrence or discovery of the cause of the Grievance." A.D. 9.6(6)(a)(ii)(4). A grievance can be rejected (if the administrative remedy fails to satisfy the procedural requirements of the requested remedy), denied, compromised, upheld, or withdrawn. A.D. 9.6(5)(n)(i)-(ii).

Plaintiff's Grievances

Defendants have submitted declarations from the Osborn and Corrigan Administrative Remedy Coordinators and DOC records showing that Plaintiff failed to satisfy the grievance process under Directive 9.6 for his Eighth Amendment claims in this action. *See* Defs.' L.R. at ¶¶ 5-6, 17-38, ECF No. 61-2; Defs.' Ex. C, Restrepo Decl. at ¶ 23, ECF No. 61-6 (review of Plaintiff's grievance filings at Osborn returned no results for grievances filed by Plaintiff between February 9, 2023 and January 23, 2024, or between October 4, 2024 and January 9, 2025);[8] Defs.' Ex. E, Jaracuso Decl. at ¶¶ 18-29, ECF No. 61-8 (review of Plaintiff's grievance

[8] Plaintiff represents that on some date in February 2023, he "attempted" to file a Level 1 Grievance at

filings at Corrigan showed no timely grievances relevant to this action); Defs.' Ex. D, Osborn Administrative Remedies Log, ECF No. 61-7; Defs.' Ex. F, Corrigan Pl.'s Level 1 Grievances, ECF No. 61-9; Defs.' Ex. G, Pl.'s Level 2 Appeal date June 6, 2024, ECF No. 61-10.

While at Corrigan, Plaintiff filed a Level 2 Grievance dated June 6, 2026, asserting that he had not received a response since March 2023 to his Level 1 Grievance concerning Osborn correctional staff's failure to protect him. *See id.* Administrative Directive 9.6 provides that when "the inmate does not receive a response to the CN 9602, Inmate Grievance Form-Level 1, the inmate shall file a CN 9604, Inmate Grievance Appeal Form – Level 2, within 65 calendar days from the date that the initial CN 9602, Inmate Grievance Form-Level 1, was documented in the CN 9609, Administrative Remedies Log." A.D. 9.6(6)(b)(ii)(2); s*ee, e.g., Simms v. Cuzio*, 2022 WL 3107150, at *9 (D. Conn. Aug. 4, 2022) ("If plaintiff had filed a Level 1 [G]rievance ... and received no response, or a rejection, he would have been required to file a Level 2 Grievance appeal, in order to exhaust his administrative remedies"). Administrative Remedy Coordinator Jaracuso returned Plaintiff's Level 2 Grievance to him with a note advising that he could not "file a level 2 grievance on a level 1 that is over a year old" and "[t]he Level 2 Grievance should have been filed after the 30 business days passed on the level 1." Defs.' Ex. G, Pl.'s Level 2 Appeal date June 6, 2024, ECF No. 61-10.

Plaintiff does not dispute that he failed to exhaust his remedies under the process set forth in Directive 9.6. Pl.'s L.R. at ¶ 38, ECF No. 66-1. Thus, the Court must consider whether Plaintiff is excused from his exhaustion requirement because his administrative remedy was not

---

Osborn concerning the lack of non-slip floor mats in the showers, but it was returned with a notation that his concern could not be addressed through the grievance process. Pl.'s Ex. A, George Decl. at ¶ 4, ECF No. 66-2.

available in practice even if it is "officially on the books." *See Ross*, 578 U.S. at 642–43.

Plaintiff submits his declaration to support his claim that the procedure under Directive 9.6 was unavailable for exhaustion of his Eighth Amendment claims. Plaintiff swears that he advised Osborn correctional officers that he wanted to grieve the failure of Osborn correctional staff to protect him from his cellmate and "repeatedly asked correctional officers how to file a grievance." Pl.'s Ex. A, George Decl. at ¶ 39, ECF No. 66-2. He avers that Osborn correctional officers refused to answer his questions about the procedure and would not provide him with the appropriate forms, which he believed were kept by the correctional staff in a desk drawer. *Id.* at ¶¶ 40-41. He states that on "several occasions" correctional officers advised him they had run out of the Level 1 Grievance forms, and that he believed he was dependent on obtaining the forms from correctional officers. *Id.* at ¶¶ 41-42. He admits that he "was finally able to obtain and complete an appropriate Level 1 grievance form" about the Osborn staff's failure to protect him from his cellmate, but that grievance was returned as "procedurally deficient," although he asserts that he continued to wait for a substantive response to his Level 1 Grievance. *Id.* at ¶¶ 43-44.

Defendants advance several grounds to challenge Plaintiff's claim of unavailability. Defendants complain that Plaintiff's only support for his claim of unavailability is his declaration consisting of self-serving, unsupported, and "broad general" statements. Defs.' Reply at 3-5, ECF No. 72.

A plaintiff is "entitled to rely on his own testimony to establish that [the prison] grievance process was unavailable to him in order to overcome his failure to exhaust administrative remedies under the PLRA." *Baltas v. Maiga*, 119 F.4th 255, 267 (2d Cir. 2024)

(citation and internal quotation marks omitted). Plaintiff's averments—although not highly detailed—describe his efforts to avail himself of his administrative remedies. *See Williams v. Baxter*, 2025 WL 1105817, at *13 (W.D.N.Y. Mar. 17, 2025), *report and recommendation adopted*, 2025 WL 1101509 (W.D.N.Y. Apr. 14, 2025) (plaintiff averred how correctional staff impeded his efforts to file a grievance, and "he need not provide their names to defeat summary judgment on this issue."). A finder of fact considering Plaintiff's testimony could reasonably determine that correctional staff thwarted his ability to exhaust his administrative remedies due to their failure to comply with Directive 9.6 by providing the assistance he requested and timely access to a Level 1 Grievance form. *See* A.D. 9.6(5)(b)(i) & (d)(i).

Defendants maintain Plaintiff's claim of unavailability fails because he admits that he was able to obtain and file a Level 1 Grievance. Defs.' Reply at 5, ECF No. 72. According to his declaration, Plaintiff filed two Level 1 Grievances while at Osborn: (1) a Level 1 Grievance filed in February 2023— about shower conditions—that was returned for the stated reason that his concern could not be addressed through the grievance process; and (2) a Level 1 Grievance filed on an unspecified date —about Osborn staff's failure to protect him from his cellmate—that was returned as procedurally deficient. Pl.'s Ex. A, George Decl. at ¶¶ 4, 43, ECF No. 66-2. Neither of these two unprocessed Level 1 Grievances are part of the record before the Court. But Plaintiff's sworn statements suggest that he could not avail himself of the administrative procedure in March 2023 absent timely access to a Level 1 Grievance form and assistance with the procedure as required under Directive 9.6. *See Carter v. Revine*, No. 14-CV-1553 (VLB), 2017 WL 2111594, at *12 (D. Conn. May 15, 2017) (finding no available administrative remedy when there was "no procedure for grievances that are not filed as a result of a correctional officer

failing to assist the inmate in the grievance process despite being so required").

Defendants contend that Plaintiff's declaration fails to establish that Osborn staff were unwilling to provide him with a grievance form when they told him no forms were available. Reply at 5, ECF No. 72. But a reasonable fact finder could conclude that simply telling an inmate that no forms are available without attempting to procure additional forms or otherwise explaining to the inmate how he might access the grievance process does amount to a failure to provide "assistance upon request," as required by Administrative Directive 9.6; on "several occasions" Plaintiff avers that officers told him that there was an inadequate supply of grievance forms. *See* Pl.'s Ex. A, Pl. Decl. at ¶¶ 42-43, ECF No. 66-2.

Defendants further contest Plaintiff's claim that his Level 1 Grievance was "refused" because he admits it was returned as procedurally deficient. Reply at 5, ECF No. 72. But Plaintiff's averments raise a question about whether staff interfered with his ability to obtain the Level 1 Grievance form and file a timely Level 1 Grievance. Even considering Plaintiff's admission that he submitted two unprocessed Level 1 Grievances, a reasonable trier of fact reviewing the current record could still determine that Osborn custody staff's refusal to provide Plaintiff with a Level 1 Grievance form and/or the requested assistance with the grievance procedure thwarted his ability to comply with at least the timeliness requirements of Directive 9.6. *Gayot v. Maldonado*, No. 14-CV-4339 (RPK) (AYS), 2024 WL 5239203, at *6 (E.D.N.Y. Dec. 28, 2024) ("A trier of fact could reasonably believe that corrections officers declined to accept grievances from plaintiff on several occasions even if officers had accepted grievances from plaintiff at other times.").

The Court recognizes that Directive 9.6 provides that a non-compliant Level 1 Grievance

returned to the inmate may be resubmitted "if the procedural requirement can be corrected[.]" *See* A.D. 9.6(6)(b)(i)(1)-(2). Although Plaintiff has not submitted his returned Level 1 Grievance so that the Court may assess when it was filed and whether the procedural deficiency could be corrected, Plaintiff's declaration, construed in the light most favorable to him, suggests that Osborn correctional staff obstructed his filing of a timely Level 1 Grievance, thereby making the administrative process set forth under Directive 9.6 unavailable to him at the relevant time. Accordingly, the Court concludes Defendants are not entitled to judgment as a matter of law on the issue of administrative exhaustion.[9]

**B. Eighth Amendment Deliberate Indifference to Safety**

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of ... inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). "[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotations omitted); *see also Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (holding that prison officials must "take reasonable measures to guarantee the safety of the inmates.") (quoting *Farmer*, 511 U.S. at 833) (internal quotation marks omitted).

But not every injury inflicted upon one inmate by another yields constitutional liability on the part of the prison official. *Farmer*, 511 U.S. at 834. Rather, a prison official violates a

[9] Defendants are correct that a prison official's failure to respond to an inmate's grievance does not render the administrative procedure unavailable where there are procedures for an inmate to follow in such circumstances. *Taylor v. New York City Dep't of Corr.*, 849 F. App'x 5, 8 (2d Cir. 2021); *see* A.D. 9.6(6)(b)(ii)(2). But Plaintiff's declaration suggests that the defendants went beyond a failure to respond by refusing to provide Plaintiff with grievance forms and by refusing to give him information about how to file a grievance. ECF No. 66-2 at 9.

prisoner's Eighth Amendment protection against cruel and unusual punishment only when two requirements are met. *Id.* First, the plaintiff must prove that the deprivation was “objectively, sufficiently serious[.]” *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). If the claim is based on the defendants’ failure to prevent harm, the plaintiff must prove that he is “incarcerated under conditions posing a substantial risk of serious harm.” *Id.*

For claims based on an alleged failure to protect a prisoner against an assault by another inmate, a plaintiff “may show a substantial risk of harm from a specific assailant, or a more general risk of harm due to the conditions at the time of the attack.” *Hurst v. Perez*, 2017 WL 187532, at *2 (S.D.N.Y. Jan. 13, 2017).

Second, the plaintiff must prove that the prison official acted with a “sufficiently culpable state of mind.” *Farmer*, 511 U.S. at 842-843 (quoting *Wilson*, 501 U.S. at 302–03). The defendants “must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.” *Id.* at 837. “[M]ere negligen[t]” conduct is insufficient. *Id.* at 835. Rather, a plaintiff must show that each defendant knew of and disregarded a serious risk of harm to his health and wellbeing, *see Tangreti v. Bachman*, 983 F.3d 609, 619 (2d Cir. 2020), for example, by introducing evidence that the defendant had actual knowledge of a “longstanding, pervasive, well-documented, or expressly noted substantial risk of inmate attacks.” *Farmer*, 511 U.S. at 842–43. This element may be satisfied where a prisoner shows “he informed correctional officials about a specific fear of assault prior to being assaulted,” so long as the “information provided to correctional officials [is] ... sufficiently detailed so as to establish that the correctional officials were sufficiently aware of the risk of harm at issue.” *Jones v. Hood, No.* 3:25-CV-01607 (VAB), 2026 WL 1283046, at

*4 (D. Conn. May 11, 2026) (citation omitted).

In *Morgan v. Dzurenda,* the Second Circuit concluded that detailed, specific, and repeated verbal and written reports to correctional officials identifying the inmate making the threat, describing the threat, and the underlying reasons were sufficient to put the officials receiving the reports on notice of a substantial risk of harm. 956 F.3d at 90. By contrast, the Second Circuit determined that a single oral report to a correctional officer indicating only that another inmate had threatened the plaintiff-inmate and he feared for his safety "lacked detail" and was insufficient to put the officer on notice of a substantial risk of harm. *See id.* at 88, 90.

In his declaration, Plaintiff explains that he was assigned a new cellmate on March 10, 2023. Pl.'s Ex. A, George Decl. ¶¶ 7, 11, ECF No. 66-2. He avers that during a discussion that day about stolen property in their shared cell, his cellmate became angry and advised Plaintiff that he had assaulted his prior cellmate and would do the same to Plaintiff. *Id.* ¶¶ 9-11. Plaintiff swears that on March 10, 2023, he asked Counselor Supervisor Casey to be relocated to the F-Block housing unit because he did not feel safe with his new cellmate.[10] *Id.* ¶ 12. He asserts Casey indicated she would attend to his request in time and added it to a pile on her desk. *Id.* According to his declaration, before the new cellmate arrived, Plaintiff had made a request to Casey for relocation to the F-Block housing unit because he believed its dorm-like setting and population with elderly or vulnerable inmates would present safer conditions than the G Block. *Id.* ¶ 6.

[10] As Counselor Supervisor Casey notes, Plaintiff alleged in his complaint that he asked her to be relocated for his safety, but that she ignored him and walked away on March 12, 2023. Defs.' Ex. M, Casey Decl. at ¶ 6, ECF No. 61-15. She declares that her review of the DOC Roster confirmed that she did not work at Osborn on either March 11 or 12, 2023. *Id.* at ¶¶ 9-10.

Plaintiff avers that Officer Rivera laughed and suggested he fight back on March 11, 2023, after Plaintiff requested relocation and explained his safety concerns about his cellmate, including information about his cellmate's disrespectful attitude, his asserted assault of a prior cellmate, and his threat to assault Plaintiff. *Id.* ¶ 18. Plaintiff declares that Officer Keaton also laughed and did not take his request for relocation seriously after he told Keaton that he "feared for his safety and wished to be relocated to a difference cell," on March 11, 2023. *Id.* ¶ 19.

Plaintiff swears that during the evening of March 11, 2023, he awoke from sleep to find his cellmate attacking him, but no correctional officers responded to the calls for help from Plaintiff and other inmates who heard the attack. *Id.* ¶ 20. He avers that when he woke up, he saw his cellmate "forging homemade weapons, including a shank, by sharpening items and molding them using hot water." *Id.* ¶ 21. Plaintiff attests to making the following requests for relocation on March 12, 2023: (1) during the afternoon, he informed Officers Guy, Chandler, Keaton, and Nelson about his cellmate's attack the previous night, that he feared his cellmate would attack him again, "this time with a homemade weapon," and that he wanted to be moved to a different cell because he feared for his safety and life, *id.* ¶ 23; (2) while passing Lieutenant Kalhotra in the hallway, he requested relocation "because [he] feared for [his] safety" and thought Kalhotra might be able to assist him, *id.* ¶ 24; and (3) after an order to return to his cell from recreation, he advised Officer Nelson about being afraid to return to his cell. *Id.* ¶ 26. Plaintiff avers Nelson promised to check on him while doing his rounds. *Id.*

Defendants swear that Plaintiff did not request them to relocate him due to his fear of being harmed by his cellmate. *See* Defs.' Ex. I, Kalhotra Decl. ¶¶ 12-15, ECF No. 61-11; Defs.' Ex. J, Rivera Decl. ¶¶ 6-11, ECF No. 61-12; Defs.' Ex. K, Keaton Decl. ¶¶ 6-9, ECF No. 61-13;

Defs.' L, Guy Decl. ¶¶ 6-9, ECF No. 61-14; Defs.' Ex. M, Casey Decl. ¶¶ 8-11, ECF No. 61-15; Defs.' Ex. N, Nelson Decl. ¶¶ 6-12, ECF No. 61-16.

Plaintiff and Defendants also offer differing accounts of what occurred during the physical altercation between Plaintiff and his cellmate on March 12, 203. Plaintiff swears that he was attacked by his cellmate soon after returning to his cell from recreation, but his cellmate stopped punching him when Officer Nelson appeared at the closed cell door. Pl.'s Ex. A, George Decl. at ¶¶ 28-29, ECF No. 66-2. He attests to alerting Nelson that everything was not "okay" in the cell, that he and his cellmate needed to move cells, and that he would have to defend himself if he were attacked again. *Id.* at ¶ 29. He avers that Nelson stepped away after stating he would open the cell door, and his cellmate then threw scalding water on him and continued to assault him with an empty hot pot. *Id.* at ¶ 30.

Correction Officer Nelson declares that Plaintiff did not inform him that "he was not alright and if cellmate Devine attacked him again, he would defend himself." Defs.' Ex. N, Nelson Decl. at ¶ 11, ECF No. 61-16. Nelson also denies stating that he would open the cell to check things out. *Id.* at ¶ 12.

Correction Officer Keaton recounts that he observed Plaintiff and his cellmate in their cell at approximately 7:35; noted they were both sweating; and he asked if there was "any issue" but both inmates responded that there was "no issue." Defs.' Ex. K, Keaton Decl. at ¶ 9, ECF No. 61-13. He states that a short time later, he observed Plaintiff and his cellmate with their hands around each other's throats, ordered them to stop fighting, and called a code for assistance. *Id.* ¶ 10.

Defendants argue no evidence shows their knowledge of "a longstanding, pervasive" risk

of Plaintiff being attacked by his cellmate during the month-long period after his transfer to Osborn on February 9, 2023. Defs.' Mem. at 21, ECF No. 61-1. The Court does not read *Farmer* to require such a showing, as that decision cites evidence of a defendant's knowledge of a "longstanding, pervasive, well-documented, or expressly noted risk of inmate attacks," *id.* at 842, as just an example of the type of evidence that would prove that the defendant had the requisite state of mind; but the Court agrees that as to two of the Defendants here, Plaintiff's communications to them were too vague to satisfy the deliberate indifference standard.

Plaintiff's declaration describes two requests made to Casey for his relocation to the F Block. Plaintiff first requested Casey to move him to F Block for reasons not related to his cellmate; and later—on the first day of his new cellmate assignment—he requested relocation because he "did not feel safe with [his] new cellmate." ECF No. 66-2 ¶ 12. Plaintiff's alleged report to Casey is too vague to suggest that he put her on notice of a specific, imminent risk of harm; he has not provided evidence that Casey was aware his cellmate claimed to have assaulted his prior cellmate, that he had threatened to harm Plaintiff, that he had expressed willingness to engage in violence, or that he had exhibited anger and antagonism towards Plaintiff. *See* Pl.'s Ex. A, George Decl. at ¶¶ 11-17, ECF No. 66-2. There is no evidence to support an inference that Counselor Supervisor Casey was aware of facts from which she could infer that Plaintiff's cellmate assignment exposed him to a serious risk of harm, requiring her to take remedial action such as relocating Plaintiff or his cellmate. *See Morgan*, 956 F.3d at 88, 90; *see Farmer,* 511 U.S. at 837 (requiring evidence that an official was "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

Likewise, there is insufficient evidence to create a question of fact about whether Lieutenant Kalhotra acted with deliberate indifference to Plaintiff's risk of being harmed by his cellmate. Plaintiff avers that, while passing Lieutenant Kalhotra in a hallway, he requested relocation due to his fear for his safety. But this brief and vague communication alone was not enough to alert Lieutenant Kalhotra to a serious need for remedial measures to prevent Plaintiff from being harmed by his cellmate.

Absent evidence to suggest Defendants Casey and Kalhotra were aware of specific facts indicating that Plaintiff's cell assignment exposed him to a substantial risk of being seriously harmed, no reasonable jury considering the present record could conclude that either Defendant acted with deliberate indifference in violation of Eighth Amendment.

The Court concludes, however, that the record raises a factual dispute about whether Osborn Correction Officers Rivera, Keaton, Guy, Chandler, and Nelson acted with deliberate indifference to Plaintiff's risk of being seriously harmed by his cellmate. Plaintiff avers that he informed Officer Rivera on March 11, 2023, that his cellmate intended to assault him, just as the cellmate had previously attacked a prior cellmate, but Rivera laughed and acted dismissively by suggesting Plaintiff fight back. *See Morgan*, 956 F.3d at 90 (subjective requirement satisfied when defendants "made dismissive remarks" to plaintiff and "ignored [his] requests for help"). Further, Plaintiff's averments about his communications with Officers Guy, Chandler, Keaton, and Nelson on March 12, 2023 suggest that they were specific and detailed enough to raise a factual dispute about whether those officers ignored a risk of serious harm to Plaintiff after he informed them that he was attacked by his cellmate the prior evening and requested relocation.

At this stage, the Court cannot make credibility assessments to resolve the competing averments. *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 2017) ("Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."). Thus, on this motion, the Court cannot determine as a matter of law that Officers Rivera, Keaton, Guy, Chandler, and Nelson did not act with deliberate indifference when they failed to take reasonable measures to protect Plaintiff from his cellmate prior to the serious attack on March 12, 2023.[11]

A reasonable jury considering the evidence—including Plaintiff's testimony about his communications with the correction officers—could determine that Officers Rivera, Keaton, Guy, Chandler, and Nelson were aware of a substantial risk that Plaintiff's cellmate would assault him but failed to take any remedial action to protect him from serious harm.

Due to the material facts in dispute, entry of summary judgment on the merits of Plaintiff's Eighth Amendment claims against Officers Rivera, Keaton, Guy, Chandler, and Nelson would be improper, but the motion is granted as to Counselor Supervisor Casey and Lieutenant Kalhotra.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment [ECF No. 61] is **GRANTED** in part and **DENIED** in part. The motion for summary judgment is GRANTED as

[11] Defendants maintain that Plaintiff's deliberate indifference claim "does not ring true in part" because the allegation in his complaint that he made a request to Casey on March 12, 2023 for relocation "is patently false" as she was not working at Osborn on March 12, 2023. Defs.' Mem. at 22, ECF No. 61-1. To the extent Plaintiff's allegation about the date of his request to Casey is relevant to his surviving claims, the finder of fact may determine whether this allegation compromises his credibility.

to Counselor Supervisor Casey and Lieutenant Kalhotra, but DENIED as to Officers Rivera, Keaton, Guy, Chandler, and Nelson.

/s/ MICHAEL P. SHEA___
Michael P. Shea
United States District Judge

**SO ORDERED** this 27th day of August , at Hartford, Connecticut.